132 F.3d 36
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Ashvin SHAH, Petitioner-Appellant
v.
UNITED STATES SECURITIES and EXCHANGE COMMISSION, Respondent-Appellee.
 No. 97-1065.
 United States Court of Appeals, Seventh Circuit.
 Argued November 5, 1997.
Decided November 26, 1997.
 
 1
 Petition for review of Opinion of the Securities and Exchange Commission in Admin.Proc., File No. 3-8893, (Formerly No. 3-8159), Complaint No. C8A920100, (Formerly No. C8920044).
 
 
 2
 Before BAUER, RIPPLE and WOOD, CJ.
 
 ORDER
 
 3
 Ashvin Shah appeals the decision of the Securities and Exchange Commission ("SEC") affirming disciplinary action taken against him by the National Association of Securities Dealers, Inc. ("NASD"). Shah argues that the SEC's credibility determinations were not supported by sufficient evidence and, therefore, should be reversed. Because we will not disturb the Committee's credibility determinations, we affirm.
 
 
 4
 In the summer of 1988, Ashvin Shah, an insurance broker and tax consultant employed by Phoenix Mutual Life Insurance Company ("Phoenix Mutual"), sought to become licensed to sell securities for Phoenix Equity Planning Corporation ("Phoenix Equity"), a NASD firm. Shah signed a Uniform Application for Securities Registration (Form U-4) on June 24, 1988, began employment with Phoenix Equity on July 11, 1988, and filed the Form U-4 with NASD on July 21, 1988.
 
 
 5
 Prior to filing the Form U-4, Shah obtained copies of prospectuses and other information about mutual funds from Phoenix Equity and provided them, along with purchase applications, to Ashish Mukherjee, one of Shah's insurance and tax clients. Mukherjee needed to make payments into a tax-qualified retirement plan by a certain deadline, but because Shah was not yet registered to sell mutual funds, Shah asked his supervisor at Phoenix Equity, Jay Olshein, to act as the registered agent for the Mukherjee transaction. On July 12, 1988, Olshein, who was also charged in this matter by NASD, sold Mukherjee four shares of mutual funds at a total cost of $20,480, yielding commissions of $755.46. Olshein and Shah agreed that after Shah became registered, Shah would receive the commission for the Mukherjee transaction and Mukherjee would become Shah's client.
 
 
 6
 In early August, before he became registered, Shah approached Olshein for an advance on the Mukherjee commissions. On August 5, Olshein wrote Shah a check for $755.46. The check cleared on August 9, 1988, and Shah became registered with the NASD ten days later, on August 19, 1988.
 
 
 7
 In August of 1991, after Phoenix Mutual terminated his employment, Shah wrote a letter to NASD alleging that Olshein had violated NASD rules by sharing commissions from securities sales with an unlicensed individual. Shah provided the NASD with documents and other information about the transaction, resulting in the filing of a complaint against both Olshein and Shah on June 29, 1992. The complaint alleged that in August of 1988, at a time when Shah was not registered as a representative of Phoenix Equity, Olshein gave Shah, and Shah accepted, a check for $755.46, representing commissions on four securities transactions, in contravention of Schedule C of NASD's by-laws[1] and in violation of Article III Section 1 of the Rules of Fair Practice.[2]
 
 
 8
 Following a hearing at which Shah and Olshein testified, the District Committee found that they had committed the violations as charged. The Committee discounted Shah's testimony that he did not know the check represented his securities commissions as inconsistent with prior statements made to NASD and found that it was not credible. The Committee also rejected Shah's alternative argument that it was his wife, Smita Shah, who was responsible for the trades, because Smita also was not a registered agent at the time of the trades and the check was made payable to Shah, not to his wife. The District Committee imposed a censure on Shah, as well as a fine of $3,255, and a requirement that he requalify by examination before again acting as a representative. Shah appealed, twice, and the decision was affirmed both times, once by the National Business Conduct Committee and once by the Securities and Exchange Committee.
 
 
 9
 On appeal, Shah argues that the District Committee, as well as the National Business Conduct Committee and the Securities and Exchange Committee, ignored important testimony and made improper credibility determinations. We give substantial deference to the Commission's findings of fact and "this deference is even greater when credibility determinations are involved." Indosuez Carr Futures, Inc. v. Commodity Futures Trading Comm'n, 27 F.3d 1260, 1266 (7th Cir.1994) (citation omitted).
 
 
 10
 The Commission's findings of facts are conclusive if supported by substantial evidence. Section 25(a)(4) of the Securities and Exchange Act of 1934, 15 U.S.C. § 78y(a)(1). Substantial evidence is " 'such evidence as a reasonable mind might accept as adequate to support a conclusion.' ... This is something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." Johnson v. National Transp. Safety Bd., 979 F.2d 618, 620 (7th Cir.1992) (quoting Consolo v. Federal Maritime Comm'n, 383 U.S. 607, 619-20 (1966) (citations omitted)). See also Edward J. Mawod & Co. v. S.E.C., 591 F.2d 588, 593 (10th Cir.1979) (agency decisions based on credibility are reviewable only if contradicted by "uncontrovertible documentary evidence or physical facts") (citation omitted).
 
 
 11
 Shah claims that the Commission erred in finding that he knew the check was for securities commissions. We disagree. The Commission's finding was supported by substantial evidence. The Commission heard testimony from Shah and Olshein, among others, and found Olshein's testimony to be more credible. Specifically, the Commission believed Olshein that Shah asked him for an advance on the commissions, that he sent Shah a check for that amount, and that along with the check Olshein sent Shah a statement showing the amount of commissions from the securities trades.
 
 
 12
 Even if there were evidence that would support a finding in Shah's favor, it would not demonstrate that the Commission's findings were not based on substantial evidence. As quoted above, that two inconsistent conclusions could be drawn from the evidence does not mean an agency's finding is not supported by substantial evidence. "Our task is simply to determine whether the agency could fairly and reasonably find the facts as it did." Johnson, 979 F.2d at 620. The Committee reviewed the testimony of Shah (twice) and of Olshein, and found Olshein to be more credible. We believe the Committee "could fairly and reasonably find" that Shah knew the $755.46 check was for securities commissions. Accordingly, the decision of the Securities and Exchange Commission is AFFIRMED.
 
 
 
 [1]
 Part III, Section 1 of Schedule C to NASD's by-laws (new Rule 1031) provides that all persons engaged in the solicitation or conduct of securities business who are to function as representatives must be registered as such with the Association
 
 
 [2]
 Article III, Section I of the Rules of Fair Practice (new Rule 2110) requires that members "observe high standards of commercial honor and just and equitable principles of trade."